UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERLE BROWN,

       Plaintiff,                                        Hon. Richard Alan Enslen

v.                                                  Case No. 1:05-CV-274

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 15). He possesses an eleventh grade education, as well as training as a furnace operator, and worked previously as a juice blender, stock person, and furnace operator. (Tr. 95, 100, 107-11).

Plaintiff applied for benefits on February 11, 2003, alleging that he had been disabled since February 8, 2001, due to seizures. (Tr. 76-78, 94). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 22-75). On April 12, 2004, Plaintiff appeared before ALJ Alfred Burton, with testimony being offered by Plaintiff, medical expert, Dr. Ashok Jilhewar, and vocational expert, Timothy Bobrowski. (Tr. 215-42). In a written decision dated September 24, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 14-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On March 27, 2001, Plaintiff was examined by Dr. John Reichert. (Tr. 137-38). Plaintiff reported that he was experiencing stiffness in the joints of his hands. (Tr. 137). Plaintiff denied experiencing any trauma to his hands and reported that he was presently working as a furnace

operator. An examination of Plaintiff's hands revealed no evidence of swelling or tenderness. *Id.* X-rays of Plaintiff's hands were "unremarkable" with no evidence of bone or joint abnormality. (Tr. 137-38). Plaintiff was instructed to take Tylenol. (Tr. 137).

During a December 4, 2001 examination, Plaintiff reported that he was experiencing an "ache" in his wrists. (Tr. 134). Plaintiff exhibited normal range of motion in his hands and an examination thereof revealed no evidence of swelling or tenderness. Tinel's sign[1] was negative. Plaintiff also reported that he had not experienced any seizures since he began taking Dilantin. *Id.*

On March 12, 2003, Plaintiff completed a report regarding his activities. (Tr. 119-22). Plaintiff reported that he shoveled snow and washed laundry, but otherwise performed no other activities around the house. *Id.* Plaintiff later acknowledged that the reason he performed so few activities around the house was because such were performed by the relatives with whom he lived. (Tr. 123). Plaintiff reported that "he could take care of all of those things, if he had an apartment of his own." *Id.*

On April 9, 2003, Plaintiff participated in a consultive examination performed by Dr. Michael Simpson. (Tr. 145-47). Plaintiff reported that he had experienced seizures for "approximately" twenty years. (Tr. 145). He described his seizures as being of two types. The first type causes him to lose consciousness and is not preceded by an aura. Plaintiff reported that he had not experienced this type of seizure since July 2002. Plaintiff described his other type of seizure as

---

[1] Tinel's test (or Tinel's sign) refers to a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury. This test is also used to detect the presence of carpal tunnel syndrome. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-140 (Matthew Bender) (1996); Frank L. Urbano, M.D., *Tinel's Sign and Phalen's Manuever: Physical Signs of Carpal Tunnel Syndrome*, Hospital Physician, July 2000 at 39.

"periods where he will stare into space for several seconds." Plaintiff reported that he experiences these types of seizures when he does not take his prescribed medication as directed. *Id.*

The results of a physical examination were unremarkable. (Tr. 146). Specifically, the doctor observed no evidence of vascular abnormality; joint instability, enlargement or effusion; diminished dexterity or grip strength; diminished range of motion; or motor or sensory abnormality. Plaintiff was also able to heel/toe walk, squat, hop, and get on/off the examination table without difficulty. *Id.* The results of a neurological examination were also within normal limits. (Tr. 146-47). The results of blood testing revealed that Plaintiff's Dilantin level was 6.5 mg/L, below the therapeutic range of 10-20 mg/L. (Tr. 148).

On June 19, 2003, Plaintiff was examined by Dr. Scott Johnson. (Tr. 166). Plaintiff reported that he was now taking his Dilantin in the prescribed amounts. He further reported that he had not experienced any seizures "for a few months." *Id.*

On July 10, 2003, Plaintiff again reported that he was taking his full Dilantin dose as prescribed. (Tr. 165). Blood testing revealed that Plaintiff's Dilantin level was 10.3 mg/L, within the therapeutic range of 10-20 mg/L. (Tr. 169).

On January 21, 2004, Plaintiff was examined by Dr. Johnson. (Tr. 204-05). Plaintiff reported that he was feeling "down" and was experiencing difficulty concentrating. (Tr. 204). Plaintiff did not report any seizure-related difficulties. The results of a physical examination were unremarkable and Plaintiff was prescribed anti-depressant medication. *Id.*

On February 11, 2004, Plaintiff was examined by Dr. Johnson. (Tr. 206-07). Plaintiff reported that since taking anti-depressant medication he was "doing much better. . .is getting more

motivation and is sleeping better." (Tr. 206). The results of an examination were unremarkable and the doctor reported that Plaintiff was "doing really well." *Id.*

At the administrative hearing, Plaintiff testified that he experiences seizures at a rate of one per month. (Tr. 228). Plaintiff testified that he also experiences difficulty with his balance. (Tr. 230). Specifically, Plaintiff reported that he sometimes walks into doors. *Id.*

Dr. Ashok Jilhewar testified at the administrative hearing that Plaintiff's seizure disorder did not satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 231-33). Dr. Jilhewar testified that Plaintiff was capable of lifting 50 pounds occasionally and 25 pounds frequently. (Tr. 150, 233-34). The doctor reported that Plaintiff was able to stand and/or walk for "about 6 hours in an 8-hour workday" and sit for "about 6 hours in an 8-hour workday." *Id.* The doctor testified that Plaintiff was able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs. (Tr. 151, 233-34). The doctor also testified that Plaintiff was unable to climb ladders, ropes, or scaffolds, and could not work at heights or near hazardous machinery. (Tr. 151, 153, 233-34).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from a seizure disorder, a severe impairment which did not satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17). The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work[3] activities subject to the following restrictions: (1) he can stand and/or walk for "about 6 hours in an 8-hour workday," (2) he can sit for "about 6 hours in an 8-hour workday," (3) he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, (4) he cannot climb ladders, ropes, or scaffolds, and (5) he cannot work at heights or near dangerous machinery. (Tr. 18-19, 239). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Timothy Bobrowski.

The vocational expert testified that there existed approximately 29,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 239-41). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Evaluated the Medical Evidence

On May 5, 2004, Dr. Johnson was deposed by Plaintiff's counsel. (Tr. 182-95). During his deposition, Dr. Johnson testified that the medication which Plaintiff was taking to treat his seizures *could* cause Plaintiff to experience fatigue and difficulties with concentration and memory. (Tr. 187-88). Plaintiff asserts that the ALJ erred by disregarding Dr. Johnson's testimony in this regard.

9

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate her rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

While Dr. Johnson testified that Plaintiff's medication *could* cause him to experience certain side effects, he did not testify that Plaintiff actually experienced such side effects. The only time Dr. Johnson notes that Plaintiff complained of fatigue was when Plaintiff was taking generic rather than branded Dilantin (Tr. 199, 200), a situation that only lasted for a couple of months. (Tr. 202). The doctor did testify, however, that Plaintiff's seizure disorder was controlled with a "standard dosage" of medication. (Tr. 186-87). The doctor also testified that "the last laboratory

value that we checked on the Dilantin level was in the therapeutic range." (Tr. 187). Furthermore, a review of Dr. Johnson's treatment notes reveals no findings or opinions which are inconsistent with the ALJ's RFC determination. (Tr. 164-76, 196-208). The ALJ, therefore, properly accorded less than controlling weight to the opinion expressed by Dr. Johnson during his deposition.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's "allegations regarding his limitations are not totally credible." (Tr. 20). Specifically, the ALJ concluded that "[w]hile the record reflects the presence of a seizure disorder, the evidence also demonstrates that it is basically controlled with intake of the proper dosage of prescribed medication - specifically, Dilantin." Plaintiff asserts that the ALJ improperly discounted his testimony that he experiences disabling limitations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

>  established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference."  *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from a severe impairment. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling limitations are not supported by the evidence detailed above. The Courts finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

### c.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 29,500 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  April 26, 2006                                    /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge